UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

NOEL DILLOW, *ET AL.*            )
                                 )
v.                               )            NO. 2:03-CV-451
                                 )
WELLMONT HEALTH SYSTEM           )
                                 )

**MEMORANDUM OPINION**

The plaintiffs' Title VII and Equal Pay Act complaint is before the Court to address the motion for summary judgment filed by the defendant. [Doc. 12].

I.   **FACTUAL BACKGROUND**

Viewing the facts in the light most favorable to the plaintiff, the following sets forth the background of this dispute. Other proof will be discussed throughout the legal analysis of this opinion.

Each of the female plaintiffs claim that the defendant hired male employees to essentially the same position for which they were employed, who had fewer qualifications, but was paid a significantly higher salary. Each of the plaintiffs, during the relevant time period, were employed by the defendant as exercise trainers, providing services to existing members of the defendant's Wellmont

Wellness Center ("Center") and to medical referrals to the Center's programs for rehabilitation, cardiac health and arthritis. The defendant's primary business is the operation of hospitals. Each of the plaintiffs has a college education, and plaintiff McIlwain holds a masters degree in exercise physiology.

Julie Cowan ("Cowan") has been the facility manager of the Center since November of 1997. During the summer of 2001, Cowan met with Eric Deaton ("Deaton"), who was at that time the Vice-President of Finance and Operations for Wellmont Bristol Regional Medical Center, the parent company of the Center. The primary purpose of the meeting was to discuss beginning a personal training fitness program at the Center. Prior to that time, the Center's personal trainers primarily offered general orientation services to its members as part of their monthly membership fee. The general orientation services included three sessions with an exercise trainer, *e.g.* one of the plaintiffs, during which an overall fitness evaluation was performed, and based upon that evaluation the trainer would develop a basic exercise program for the new member and show the member how to use the various types of equipment.

While the Center also offered some personal training services, whereby a member would receive one-on-one individualized service from an exercise trainer in exchange for an additional fee beyond the normal monthly dues, the program

had not been developed significantly. In fact, personal trainers at the Center, like the plaintiffs, only did personal training to the extent they were able to do so in addition to their primary assigned responsibilities. Plaintiff Dillow's primary responsibilities were management of the extended rehabilitation program, the pulmonary conditioning program and the arthritis program. Plaintiff McIlwain's primary responsibilities were management of the cardiac program. She was also responsible for assisting plaintiff Dillow with the arthritis program, working the front desk, and conducting new member orientations. Plaintiff Stallard's primary responsibility was to provide general orientation services to new members of the Center. She was also responsible for managing the Center's after-school and summer kids programs and for working with the arthritis program.

When Cowan spoke to Deaton about developing a more expansive personal training program, she suggested that they find a new employee to develop a successful personal training program. She mentioned that a personal acquaintance, Roger Altizer ("Altizer"), who was well known in the local health and fitness industry, and was managing a personal training program at a fitness center in Johnson City, Tennessee, might be able to provide some guidance for developing the Center's program.

3

Cowan contacted Altizer, and during their conversation, Altizer informed her that he was personally interested in developing the program. Altizer did not have a college degree in exercise science or a related field, but possessed 16 years of experience in the fitness industry, was managing a personal training program, had a client base which the Center hoped to acquire, and possessed fitness certifications with various fitness certifying bodies.

After Cowan shared with Deaton Altizer's interest in the position, Deaton discussed withAltizer a potential starting salary for the coordinator position. At the time, Altizer was making approximately $45,000.00 per year, but did not have health insurance or other benefits. Altizer expressed a great interest in having employee benefits such as health insurance. After considering Altizer's current salary, and the cost of added benefits, Deaton determined that the amount of $35,000.00 per year would be essentially equivalent to what Altizer was making at his current position. Accordingly, Deaton made the decision to establish a starting salary of $35,000.00 per year. Like Cowan, Deaton did have some prior experience with Altizer. Deaton worked out at the fitness facility in Johnson City where Altizer was employed, and Altizer had done some personal training for Mr. Deaton's wife.

Altizer began his employment at the Center on November 26, 2001. His job title was "personal training coordinator" for the Center's personal training program, which was entitled the "Wellfit Personal Training Program." Altizer's responsibilities included developing, managing and overseeing the personal training program and turning it into a profitable program for the Center.

Cowan testified that because Altizer's employment is dependent upon making the Wellfit program profitable, he bears a level of risk unlike the other exercise trainers at the Center. In addition, as part of Altizer's responsibilities, he generally works from 9.5 to 10 hours per day, unlike the plaintiffs who generally worked 8 hours or less per day. Ms. Cowan further testified that the Wellfit program's revenues increased from $4,470.00 in 2001 to $91,370.00 in 2004. However, there is some dispute as to whether the program has realized a profit. Initially, as part of his job description, Altizer's goal was to train 20 clients a month. Cowan testified that they later realized the goal was unrealistic, and lowered the goal to eight.

Once the plaintiffs learned of the salary differential between themselves and Altizer, they began complaining to Cowan, and even lodged a formal grievance which was received by Bart Hove ("Hove"), President of the Wellmont Bristol Regional Center Hospital. As a result of the filing of the plaintiffs' grievance,

5

Hove issued a report in which he found that the plaintiffs had a legitimate grievance relative to the failure of Cowan and Deaton to post Altizer's position internally, but found that their other allegations were not well taken.

Following the filing of their grievance, the plaintiffs contend that the defendant retaliated against them in violation of Title VII. However, the plaintiffs' response in opposition to the defendant's motion for summary judgment fails to address the defendant's argument that plaintiffs have failed to set forth a *prima facie* case for retaliation. Nevertheless, plaintiffs allege in their complaint that Cowan has made it a practice to ignore any requests of the plaintiffs and reprimands and criticizes them unjustly. Additionally, the plaintiffs make some allegation in their affidavits that their office spaces were reassigned in retaliation for their complaints, that Altizer was promoted to their detriment, and Altizer was assigned better access to a computer.

Each of the plaintiffs filed a timely charge of discrimination with the EEOC and has received a "right to sue" letter.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a

light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the plaintiffs because they are the litigants opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>*." Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

Id. at 871.

III. **DISCUSSION**

A. Plaintiffs' *Prima Facie* Case of Discrimination.

"The Equal Pay Act prohibits wage discrimination 'between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Timmer v. Michigan Dep't. of Commerce*, 104 F. 3d 833, 843 (quoting 29 U.S.C. § 206(d)(1)). Additionally, Title VII provides, in pertinent part: "it shall be unlawful for an employer . . . to discriminate against any individual with respect to his compensation . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). While the plaintiffs are correct that the plaintiffs' failure to succeed in establishing a *prima facie* case under the Equal Pay Act does not necessarily preclude them from proceeding under Title VII, where the Equal Pay Act claim and Title VII claim arise out of the set of facts, and both claims set forth a charge of wage discrimination, "[a] finding of 'sex discrimination in compensation' under [Title VII] is tantamount to a finding of 'pay discrimination on the basis of sex' under the [Equal Pay Act]." *Korte v Diemer*, 909 F. 2d 954, 957 (6th Cir. 1990).

To establish a *prima facie* case under the Equal Pay Act, the plaintiffs must show that the defendant paid employees of one sex less than employees of the

8

opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . ." 29 U.S.C. § 206(d)(1). The jobs need not be equally precise, but there need be only substantial equality of skill, effort, responsibility and working conditions." *Odomes v. Nucare, Inc.*, 653 F. 2d 246, 250 (6th Cir. 1981). If the plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to show that the difference in pay is justified by one of four affirmative defenses set forth in the Act. To the extent the plaintiff in this case is able to establish a *prima facie* case, the only affirmative defense which would apply is the "catch-all" provision, that is, that the pay differential is based on any additional factor other than sex. 29 U.S.C. § 206(d)(1).

Where, as in this case, the plaintiffs have failed to set forth any direct evidence of discrimination, *e.g.* by proving that the employer admitted it would have paid the plaintiffs more if they were a male, or if the plaintiffs demonstrated a transparent sex-biased system for determining rate of pay, the plaintiffs must establish discrimination by producing circumstantial evidence which would support an inference of discrimination. Where the plaintiff's Title VII claim is founded upon a comparison of the plaintiff to another employee in order to establish a *prima facie* case, the plaintiff must establish that all relevant aspects of

9

her employment situation were similar of that of the other employee. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 352 (6th Cir. 1998). In making this determination, the factors to be considered by the Court are the same as those utilized in determining whether the employee performed "equal work" for purposes of the Equal Pay Act. *Conti v. Universal Enterprises, Inc.*, 50 Fed. Appx. 690, 699 (6th Cir. 2002).

After reviewing the proof presented by the plaintiffs of their job duties as compared to that of Altizer, the Court is of the opinion that the plaintiffs have failed to set forth a *prima facie* case under either Title VII or the Equal Pay Act because the plaintiffs have failed to establish that their positions were substantially equal to that of Altizer.[1] The proof in this case clearly presents a situation where the defendant sought to create a new program. While this new program, not surprisingly, was not entirely different from services already offered by the defendant, the defendant sought to expand its personal training offered to not only its present members, but to entice other persons to join the defendant's Center in an

---

[1] The Court is cognizant of the defendant's motion to strike certain portions of the affidavits of the plaintiffs filed in support of their response to the defendant's motion for summary judgment. While the Court is not expressly ruling upon that motion herein, great care has been taken in performing the duties of this Court, which require it, in examining a motion for summary judgment, to consider only evidence which would be admissible at trial. Clearly the affidavits of the plaintiffs do contain speculation, hearsay statements, and recitations of the testimony of other witnesses, with a failure to cite to the record. In reviewing the plaintiffs' affidavits, the Court has attempted to separate the "wheat from the chaff" considering only testimony which would be admissible at trial, and to the extent the affidavits cite to the testimony of other witnesses, only considering those statements to the extent there is contained in the record copies of the testimony of those witnesses presented either by the plaintiffs or the defendant.

effort to raise further revenue. In finding a candidate to help establish that program, it is not surprising that Cowan would select someone with whom she is familiar both personally and by professional reputation. Plaintiffs make much of the fact that Cowan and Deaton knew Altizer prior to his hiring, going so far as to suggest that he was hired because Cowan and Deaton wanted to help out a friend who was working at a job without any benefits. While certainly this "cronyism" that the plaintiffs complain of, if true, can be viewed as "unfair," merely showing favoritism to ones friends is not any direct proof that Altizer was being paid a higher wage on the basis of his sex.

The starting salary which was set for Altizer was clearly commensurate with the salary he was earning prior to his employment with the defendant. At his previous job he had been earning approximately $45,000.00 per year. It is undisputed that his salary with the defendant of $35,000.00 plus benefits was essentially equivalent to $45,000.00 value. Altizer's testimony establishes that the duties he was performing at his previous job were substantially similar to that which he preformed for the defendant, and it is reasonable to expect that the defendant would offer Altizer pay commensurate to his previous employment.

The responsibilities of Altizer are clearly different than responsibilities of these plaintiffs. Each of the plaintiffs was working in an already established

11

program of the defendant.  It is notable that the defendant's Center is part of a hospital system, and that the plaintiffs were required to work on programs which the defendant viewed as a service to its members and the community.  In contrast, Altizer's position was viewed by the defendant as a substantial revenue creator above and beyond what it considered to be its basic services.  It is also notable that the defendant, at the time it hired Altizer, was interested in expanding its hospital operations into Johnson City, Tennessee, and that Altizer was well known in the Johnson City community.

   In contrast to Altizer, the plaintiffs personal training duties were primarily only work to be done above and beyond their normal duties.  Altizer was expected to help bring in additional clientele, and create a program where those clientele would be willing to pay more money for a greater number of personal training sessions than that previously offered by the defendant.  In other words, while plaintiffs had opportunity to do personal training, their employment was not dependent upon them obtaining their own personal training clientele and generating revenue for the program.

   Plaintiffs point out that, in their opinions, the program enacted after Altizer's hiring was not very successful, and that it is possible, despite the substantial increase in revenues brought in by the program, that the program was actually

12

Case 2:03-cv-00451   Document 46   Filed 11/21/05   Page 12 of 16   PageID #: 162

losing money.  However, the Court is not permitted to look beyond the business decision of the defendant.  Hindsight is always 20/20 and not every business decision of a corporation can be expected to be financially lucrative.

Plaintiffs, in seeking to establish that Altizer was performing essentially the same duties as they, argue that he only did personal training and in reality did not coordinate anything.  However the uncontroverted testimony establishes that what the defendants intended by the "coordinator" requirement of Altizer's job was that he would coordinate additional personal trainers, which defendants hoped would be necessitated by growth of the program in the future, not that he would become the supervisor of the plaintiffs, who were already working in established positions.

The most substantial differentiation of the position of Altizer from that of the plaintiffs is that Altizer's position was "at-risk."  In other words, Altizer's position was tied to the success of his program.  While certainly any employee's position is at-risk, it is clear that this defendant, by creating a new position which was directly linked to the creation of a new program and new membership, created a situation where Altizer needed to create a client base to, at the very minimum, pay for his position.  To counter this, the plaintiffs claim that Altizer did little to promote his position and in reality, promotion of his position was handled primarily by Cowan.  Plaintiffs seem to suggest that in creating this new position

13

and program, and in hiring Altizer, the defendant should have placed Altizer in the position of having to sink or swim, and could not assist him in establishing this program. The suggestion is somewhat laughable, since the defendant may only benefit from Altizer's position by the success of the program. Any reasonable employer would be expected to assist in the promotion of a program to insure its success.

For the foregoing reasons, plaintiffs have failed to carry their *prima facie* burden of proof, by failing to establish that they performed substantially equal work to that of Mr. Altizer.

B.     Retaliation Under Title VII

To establish a *prima facie* case of retaliation, the plaintiffs must show that they engaged in protected opposition to discrimination, that their exercise of protected rights was known by their employer, that they were subjected to adverse employment actions subsequent to or contemporaneous with the protected activity, and the existence of a causal relationship between the protected activity and the adverse employment action. *Thomas v. Owen Electric Cooperative, Inc.*, 121 Fed. Appx. 598, 604 (2005). It is undisputed that the plaintiffs voiced opposition to their perceived discrimination and that their complaints were known by the defendant. However, the plaintiffs have failed to demonstrate that they suffered

14

any adverse employment action.[2]

In determining whether the plaintiffs have suffered an adverse employment action, "courts have made clear that not just any discriminatory act constitutes discrimination under Title VII." *White v. Burlington Northern and Santa Fe Railway*, 364 F. 3d 789, 795 (6th Cir. 2004). "Employment actions that are *de minimis* are not actionable under Title VII." *Id.* The allegations set forth by the plaintiffs do not rise to the level of adverse employment action. Unkind statements attributed to Cowan, and Cowan ignoring plaintiffs' suggestions have had no adverse effect on the plaintiffs' responsibilities, salary or benefits. The reassignment of offices complained of by the plaintiffs is likewise a *de minimis* action, an action which was perpetuated by the plaintiffs own complaints about office assignments, and resulted from the defendant's attempts to put the plaintiffs and Altizer in similar office conditions. Similarly, providing Altizer a computer was an attempt by the defendant to give its employees equal access to computers.

Plaintiffs' argument also factors heavily that the defendant made efforts to promote Altizer as a personal trainer to the exclusion of the plaintiffs, such as creating a television commercial in which Altizer, but not the plaintiffs is seen. As discussed earlier in this opinion, it is not surprising that the defendant would

---

[2] As indicated earlier this opinion, the plaintiffs' response to the motion for summary judgment could be read as not opposing summary judgment on plaintiffs' retaliation claim.

attempt to promote a new program it was trying to get off the ground. The plaintiffs have further failed to establish that the assignment of new clients to Altizer for personal training was an adverse action to the plaintiffs. The plaintiffs, unlike Altizer, were not primarily responsible for personal training, and were not the proponents of the program.

Accordingly, the Court is of the opinion that the plaintiffs have failed to set forth a *prima facie* case for retaliation under Title VII.

An order consistent with this memorandum opinion shall enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE